## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Lauren Daly,　　　　　　　　　　：
　　　　　　　　　　　　　　　　：　　CIVIL ACTION
　　　　　　　v.　　　　　　　　 ：　　No. 21-281
　　　　　　　　　　　　　　　　：
Lonnie Oliver, et al.　　　　　　 ：
　　　　　　　　　　　　　　　　：

**May 8, 2024**　　　　　　　　　　　　　　　　　　　　**Anita B. Brody, J.**

### MEMORANDUM

Habeas petitioner Lauren Daly moves for relief under Fed. R. Civ. P. 60(b) based on her attorney's failure to timely file objections to Magistrate Judge Scott W. Reid's Report and Recommendation ("R&R"). Because she has shown good cause for relief from the judgment, I will grant Daly's 60(b) Motion, reopen her case, and review her objections to the R&R. However, because Daly does not raise meritorious objections to the R&R, I will overrule her objections and deny her petition for habeas corpus relief under 28 U.S.C. § 2254.

## I. PROCEDURAL HISTORY

On January 11, 2021, Lauren Daly, represented by her attorney Craig M. Cooley, petitioned this Court for relief from her Pennsylvania state court convictions for attempted murder, aggravated assault, endangering the welfare of a child, possession of a weapon, and recklessly endangering another person. Petition, ECF No. 1. I referred Daly's petition to Magistrate Judge Timothy R. Rice for the

1

preparation of an R&R. Order, ECF No. 2.

On March 15, 2021, Daly moved for leave to amend her habeas corpus petition. First Motion for Extension of Time to Amend 2254 Petition, ECF No. 4. Magistrate Judge Rice granted Daly's motion the next day, allowing her until September 15, 2021—six months from the date of her request—to file an amended petition. Order, ECF No. 5. Daly did not do so. Instead, on September 16, 2021, Daly filed a second motion for leave to file an amended petition. Second Motion for Extension of Time to Amend 2254 Petition, ECF No. 14. Magistrate Judge Scott W. Reid, to whom the case had been transferred, denied Daly's motion and cited the six-month extension she had already been granted. Order, ECF No. 15; *see also* ECF No. 9 (transferring case). Despite Magistrate Judge Reid's order, Daly filed a reply on October 11, 2021 that raised multiple new claims for relief. Amended 2254 Petition and Response to the Commonwealth's Reply ("Amended Petition"), ECF No. 16.

On March 28, 2023, Magistrate Judge Reid issued an R&R recommending that Daly's petition be dismissed in part and denied in part, holding that some of Daly's claims were time-barred, one was not properly exhausted in state court, and that the others lacked a showing of prejudice. ECF No. 22.

Daly, through her attorney Craig Cooley, did not file any objections to Magistrate Judge Reid's R&R. Cooley spoke with his client on April 4, 2023 to

2

discuss the objections to the Report and Recommendation. Amended Motion for Relief Under 60(b) ("60(b) Motion"), ECF No. 31, at 6.[1] Cooley then attempted to timely upload the objections on April 5, 2023, but he failed to click the final button on the ECF filing system. *Id.* at 3. Cooley apparently committed a similar error in 2019 in a case in the Western District of Pennsylvania. *Id.* at 4, 40. Despite that prior experience, Cooley failed to notice that he had not received the auto-generated confirmation email confirming his submission. Response in Opposition to Motion for Rule 60(b) Relief ("Response to 60(b) Motion"), ECF No. 36, at 2. On April 6, 2023, Cooley billed his client by emailing an invoice to Daly's father and then calling him. 60(b) Motion at 8, 9. Cooley's objections were still not docketed.

On September 27, 2023, I adopted Magistrate Judge Reid's Report and Recommendation. Order Adopting R&R, ECF No. 23. Cooley believed that the Court's lack of discussion of his objections stemmed from the Court's implicit conclusion that they were not meritorious. 60(b) Motion at 31. The same day the R&R was adopted, Cooley reached out to schedule a legal call with his client. *Id.* at 10. On October 5, 2023, he spoke on the phone with Daly. *Id.* at 11. At no time during this period did Cooley see that the objections to the R&R were missing from the docket.

---

[1] For citations within Daly's 60(b) Motion, I use the ECF-generated page numbers because the motion is not otherwise consistently paginated.

On October 11, 2023, Cooley filed a notice of appeal at the Third Circuit. Notice of Appeal, ECF No. 24. Nearly two months later, on December 7, 2023, Cooley realized that he had never filed his objections to the R&R. 60(b) Motion at 12. He filed a motion for relief from the judgment under Fed. R. Civ. P. 60(b), seeking to reopen Daly's case and file objections to Magistrate Judge Reid's R&R. ECF No. 26. This motion was filed under Rule 60(b)(1) (allowing a Court to relieve a party from a final order based on mistake, inadvertence, or excusable neglect) and Rule 60(b)(6) (allowing relief from a judgment for "any other reason that justifies relief"). I granted Daly's motion in error and then vacated my order because I lacked jurisdiction due to Daly's pending appeal. ECF No. 27 (granting 60(b) relief); ECF No. 30 (vacating order granting 60(b) relief). Cooley moved to dismiss Daly's case at the Third Circuit, and he re-filed his 60(b) Motion in this Court prior to a ruling on the dismissal of his appeal. 60(b) Motion at 2.

On February 23, 2024, the Third Circuit remanded this case to this Court for the limited purpose of ruling on Daly's pending motions. *Daly v. Superintendent Cambridge Springs SCI*, No. 23-02860, Doc. No. BL-18 (3d Cir. Feb. 21, 2024). I ordered briefing on Daly's refiled motion for relief. Order, ECF No. 33. This motion is now ripe for disposition.

## II. DISCUSSION OF MOTION UNDER RULE 60(B)

Federal Rule of Civil Procedure 60(b)(1) allows a court to "relieve a party or

its legal representative from a final judgment . . . based on mistake, inadvertence, surprise, or excusable neglect" if the motion is filed within a reasonable time, and in any case no more than a year after the entry of the judgment. Relief may also be granted under Rule 60(b)(6) for "any other reason that justifies relief" if the motion is filed within a reasonable time. In some situations, a motion under Rule 60(b) is construed as a "second or successive" habeas petition, and the habeas petitioner must seek leave of the circuit court prior to filing such a motion.

As I set forth below, Daly's filing is not an improper "second or successive" petition because it was filed prior to the exhaustion of her initial habeas petition's appellate remedies. Turning to Rule 60(b), I conclude that Cooley's error cannot be excused under Rule 60(b)(1) because his mistake in this case was too significant. However, I will grant the motion under Rule 60(b)(6) to ensure that Daly does not forfeit her right to seek full habeas review because of her attorney's error.

## A.  Second or Successive Petition

Respondents (collectively, "the Commonwealth") first argue that Daly's 60(b) Motion is properly understood to be a successive habeas petition, and that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires Daly to seek leave from the Third Circuit before filing such a motion. Response to 60(b) Motion at 3–5 (citing 28 U.S.C. § 2244(b)). The Commonwealth cites *Gonzalez v. Crosby* for the proposition that a motion attacking a petitioner's "habeas counsel's

omissions . . . does not go to the integrity of the proceedings" and therefore constitutes a successive habeas petition. Response to 60(b) Motion at 4 (citing *Gonzalez v. Crosby*, 545 U.S. 524, 532 n.5 (2005)).

However, *Gonzalez*'s restriction does not apply when a subsequent habeas petition (or equivalent motion) is filed "during the pendency of an appeal of the district court's denial of the petitioner's initial habeas petition." *United States v. Santarelli*, 929 F.3d 95, 105 (3d Cir. 2019). The panel in *Santarelli* reasoned that habeas petitioners were entitled to "one full opportunity to seek collateral review" of a conviction, and that such review includes appellate review of a district court's denial of habeas relief. *Id.*, 929 F.3d at 104. Habeas petitions filed after the exhaustion of appellate remedies are "second or successive"; those filed while appellate remedies are still available are not. *Id.*

Here, Daly filed her 60(b) Motion while her initial habeas case was still pending on appeal. Therefore, her motion does not constitute a "second or successive" petition, and she did not need to seek the leave of the Third Circuit prior to filing her petition in this Court.

## B.  Rule 60(b)(1): Mistake, Inadvertence, Surprise, or Excusable Neglect

Daly seeks relief from the judgment based on Fed. R. Civ. P. 60(b)(1), arguing that the judgment should be set aside based on her attorney's mistake, inadvertence, or excusable neglect. 60(b) Motion at 12. Counsel's negligent failure to object to an

R&R is examined under the "excusable neglect" provision of the rule. *Orie v. District Attorney Allegheny Cnty.*, 946 F.3d 187, 191 (3d Cir. 2019). The test for "excusable neglect" in the context of a 60(b)(1) motion is equitable, and it requires the Court to weigh the "totality of the circumstances." *Id.* (citing *Nara v. Frank*, 488 F.3d 187, 193 (3d Cir. 2007)). As part of this analysis, courts must consider: (1) the danger of prejudice to non-movants; (2) the length of delay and potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Nara*, 488 F.3d at 194.

The Commonwealth acknowledges that there is little prejudice to the non-moving party in this case. Response to 60(b) Motion at 8. The only prejudice that it identifies is that additional briefing could be—and has already been—required as part of this post-judgment motion practice. Because of the limited prejudice in this case, this factor favors granting Daly's motion.

The potential impact on judicial proceedings, and the length of future delay caused by the 60(b) Motion, are similarly limited. Daly's appeal of the denial of her habeas petition is already docketed at the Third Circuit. If her motion is granted, and this Court's decision on the merits of her petition remains the same despite her objections, Daly may proceed with her appeal under a different standard of review. If her motion is granted, and this Court grants her habeas petition based on issues raised in her objections, the Commonwealth may appeal and litigate the same issues.

Judicial proceedings will likely continue regardless of the outcome of Daly's 60(b) Motion, or the meritoriousness of her objections.

The other part of the second *Orie* factor is the length of delay, and the third *Orie* factor is the reason for the delay. These considerations weigh heavily toward denying Daly's motion. Cooley describes his failure to submit objections to the R&R by stating: "Counsel dropped the ball – there's no other way to put it." 60(b) Motion, at 12. The 60(b) motion was filed 254 days after the issuance of the R&R, and 71 days after this Court adopted the R&R.

Short delays—of a few days—can constitute mistakes or excusable neglect under the 60(b)(1) standard. For instance, in *United States v. Berger*, 86 F.R.D. 713 (W.D. Pa. 1980), the defendant's attorney's hospitalization delayed him from filing a timely answer. Eleven days after default judgment was entered, the attorney filed a 60(b) motion, and the court reopened the case. The court noted that the attorney had the ability to call the court or opposing counsel about his condition but had failed to do so. *Id.*, 86 F.R.D. at 715. However, such a mistake was excusable, and the court stated that "parties should not be penalized for the negligence of their attorneys except in extreme and unusual circumstances." *Id.* (citation omitted).

In *Orie*, the attorney's error was more severe, although it did not rise to the level of error committed by Daly's attorney. *Orie* arose in a context very similar to Daly's: a habeas petitioner's attorney failed to timely object to a Report and

8

Recommendation prepared by a Magistrate Judge. *Orie v. District Attorney Allegheny Cnty.*, 946 F.3d at 190. The attorney apparently gave the R&R to his assistant, assuming that the assistant would send the document to the habeas petitioner and that the petitioner would inform the attorney's office if she wished to file objections. *Id.* The legal assistant failed to do so, and the petitioner did not learn that her habeas petition was denied until after the district court adopted the R&R. *Id.*, 946 F.3d at 191. The petitioner's motion under Rule 60(b)(1) was filed about two weeks after the district court adopted the R&R. *Id.*, 946 F.3d at 190. The Third Circuit affirmed the district court's denial of this motion, concluding that "[t]he unhappy consequence of [these] facts is that the 'overall negligence in handling the matter precludes us from finding 'excusable neglect.''" *Id.*, 946 F.3d at 192 (citing *Nara*, 488 F.3d at 194).

Cooley's failure to click "next" may have constituted excusable neglect if he had realized the next day, or even a week later, that his objections had not been successfully docketed. However, Cooley's delay spanned over several months, during which he communicated with his client, billed his client's family member, received another notification from the case when the R&R was adopted, and docketed an appeal. This delay is delay inexcusably long, particularly in light of the much shorter delay in *Orie* itself.

Finally, the Commonwealth concedes that there was no sign of affirmative

bad faith on the part of Daly's or her attorney. Response to 60(b) Motion at 12 (discussing fourth *Orie* factor). However, this factor does not allow the Court to overlook Cooley's extreme delay in realizing and then rectifying his error in this case.

While most of the *Orie* factors are neutral or point toward allowing Daly to be relieved from the judgment under Rule 60(b)(1), Cooley's error was too great to fall under this provision of Rule 60 given the length of his delay. Daly's motion will be denied to the extent it seeks relief under Rule 60(b)(1).

## C.  Rule 60(b)(6): Any Other Reason that Justifies Relief

Daly also moves for relief under Federal Rule of Civil Procedure 60(b)(6), which allows a court to set aside a judgment based on "any other reason that justifies relief." Relief can only be granted under this provision if the provisions in Rule 60(b)(1)–(5) do not apply. *Boughner v. Sec'y of Health, Educ., and Welfare*, 572 F.2d 976, 978 n.8 (3d Cir. 1978) (citing *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975)). Daly only moves for relief under Rule 60(b)(1) and 60(b)(6), and the other subdivisions do not apply (newly discovered evidence, fraud, voidness of the judgment, and satisfaction of the judgment). Because Rule 60(b)(1) does not excuse Daly's attorney's error, only Rule 60(b)(6) remains to set aside the judgment.

Rule 60(b)(6) is reserved for "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Norris v. Brooks*,

794 F.3d 401, 404 (3d Cir. 2015) (citation omitted). In the context of attorney error, the movant under Rule 60(b)(6) must show extreme negligence. *Carter v. Albert Einstein Med. Ctr.*, 804 F.2d 805, 807 (3d Cir. 1986) (citing *Boughner*, 572 F.2d 976).

In *Boughner v. Sec'y of Health, Educ., and Welfare*, 572 F.2d 976, the Third Circuit held that an attorney's gross neglect met the standard for relief under Rule 60(b)(6). In *Boughner*, the plaintiffs' attorney failed to oppose the defendant's summary judgment motions, and the motions were granted as unopposed. *Id.*, 572 F.2d at 977. The attorney had similarly failed to file responsive pleadings in his other cases. *Id.* The plaintiffs then moved under Rule 60(b)(1) and 60(b)(6), citing that their attorney's ongoing judicial campaign, the loss of his secretary, and his case backload caused his failure to respond to these motions, and that they should be relieved from the adverse judgments. *Id.* The district court denied relief under Rule 60(b)(1), and the Third Circuit affirmed, agreeing that "the record before us does not show circumstances indicating any mistake, inadvertence, surprise, or excusable neglect" that would make Rule 60(b)(1) applicable. *Id.*, 572 F.2d at 978. However, the Third Circuit reversed the district court's denial of the motion under Rule 60(b)(6), stating: "The conduct of [the attorney] indicates neglect so gross that it is inexcusable. The reasons advanced for his failure to file opposing documents in a timely fashion are unacceptable." *Id.* The Third Circuit held that relief under

60(b)(6) was appropriate, and that "appellants [were] not bound by the acts of their attorney for the purposes of the rule[,]" reasoning that, "[t]o permit these judgments to stand, in light of [the attorney's] conduct and the absence of neglect by the parties, would be unjust. A motion under Rule 60(b)(6) should be granted when 'appropriate to accomplish justice.'" *Id.*, 572 F.2d at 979 (citing *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949)).

In *Carter v. Albert Einstein Med. Ctr.*, the Third Circuit once again examined Rule 60(b)(6)'s applicability in the context of severe attorney error. 804 F.2d 805 (3d Cir. 1986). In that case, the plaintiff's attorney failed to answer the defendant's interrogatories, did not respond to a motion to dismiss, and failed to appear at a pretrial conference. *Id.*, 804 F.3d at 806. Five months after the initial missed deadline, the attorney moved under Rule 60(b) to reinstate the complaint. *Id.* The district court denied this motion, as well as a subsequent reconsideration motion, citing that the plaintiff still entrusted his attorney to file a 60(b) motion and was therefore bound by his attorney's missteps. *Id.*, 804 F.3d at 807–808.

The Third Circuit reviewed the district court's denial of the Rule 60(b) motion. The panel noted that, while a client is generally liable for the acts of the lawyer they retain, *Boughner* stands for the principle that, in some situations, clients are not bound by their attorney's actions for the purposes of Rule 60(b). *Id.*, 804 F.3d at 807 (citing *Boughner*, 572 F.3d at 978). The Third Circuit recognized that some

12

sanction short of dismissal, "visited directly on the delinquent lawyer," can be appropriate where a client is not actually at fault. The Third Circuit vacated the district court's order denying the 60(b) motion, and it ordered the district court to reinstate the complaint and impose appropriate sanctions on the plaintiff's counsel. *Id.*, 804 F.3d at 808.

Severe attorney error does not always constitute a sufficient ground for relief under Rule 60(b)(6). If the attorney made a poor strategic choice or purposefully negotiated away certain claims, their client is nonetheless bound by their decisions. *See Coltec Industries, Inc. v. Hobgood*, 280 F.3d 262, 275 (3d Cir. 2002) (affirming denial of 60(b) motion because the plaintiff "deliberately chose to negotiate away its constitutional claims while actively represented by competent counsel."). Additionally, if a party itself is partially at fault for the delay in moving under Rule 60(b)(6), relief is foreclosed. *Ethan Michael Inc. v. Union Twp.*, 392 F. App'x 906, 910 n.5 (3d Cir. 2010) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993)).

Here, Daly is entitled to relief under Rule 60(b)(6). Her attorney's conduct constitutes gross neglect, denial of her motion would result in extreme and unexpected hardship, and Daly herself was not at fault for the delay in seeking relief.

Cooley realized his error in failing to object to Magistrate Judge Reid's R&R approximately eight months after his objections were due. This is more egregious

than the situation in *Carter*. There, the attorney delayed five months prior to filing a 60(b) motion, and that attorney's error was grave enough that the Third Circuit reversed the district court's discretionary denial of 60(b)(6) relief. Like in *Carter*, Cooley's error here is the latest in a larger pattern: Cooley previously missed the deadline to amend Daly's habeas petition by a wide margin. Cooley also admits that he has made at least one similarly grave error in the past. This is reminiscent of *Boughner*, in which the attorney's conduct in other cases was one factor in the panel's decision to reverse the district court's denial of the 60(b) motion. Taken as a whole, Cooley's conduct rises to the level of gross neglect that was found in both *Boughner* and *Carter*.

Cooley's misconduct is extraordinary in part because Daly lacks a viable alternative to remedy Cooley's error. In *Carter*, the Third Circuit outlines the limited remedies available to a client wronged by their attorney:

> Although an action for malpractice is a possibility when a lawyer's negligence results in dismissal, that remedy does not always prove satisfactory. It may be difficult for the client to obtain and collect a judgment for damages. Perhaps more importantly, public confidence in the administration of justice is weakened when a party is prevented from presenting his case because of the gross negligence of his lawyer who is, after all, an officer of the court . . . Allowing derelictions to await possible punishment through lengthy malpractice litigation or disciplinary board proceedings is not likely to be effective in deterring future misconduct. Consequently, we do not favor dismissal of a case when the attorney's delinquencies—not the client's—necessitate sanctions.

804 F.3d at 808.

Daly's situation is even more dire because it arises in the habeas context. The writ of habeas corpus "plays a vital role in protecting constitutional rights." *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Rule 60(b) provides "a grand reservoir of equitable power to do justice in a particular case." *Cox v. Horn*, 757 F.3d 113, 121 (3d Cir. 2014) (citation omitted). This rule "has an unquestionably valid role to play in habeas cases." *Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005). Daly's attorney's error, if allowed to stand, would subject this Court's denial of her habeas claim to plain error review by the Third Circuit, even if she receives a certificate of appealability. *Nara v. Frank*, 488 F.3d at 196. The alternative (but insufficient) remedies suggested in *Carter* fall flat in the habeas context: Daly will receive no meaningful relief by suing her attorney for malpractice or reporting his misconduct.

Finally, Cooley's error and delay do not appear to be attributable to Daly. There is no allegation that she was told about any failure to file objections; in fact, Cooley alleges that he affirmatively told Daly her objections were filed because he believed at the time that they had been docketed. Daly may not have been able to check the docket herself from her present place of incarceration. Therefore, *Pioneer*'s urging that Rule 60(b)(6) requires a party to be "faultless in the delay" does not block Daly from relief here. 507 U.S. at 393. Daly's entrusting of Cooley to file a 60(b) motion on her behalf does not mean she is bound by all his errors. *Carter*, 804 F.3d at 807–808.

## D.  Conclusion

Daly's motion under Rule 60(b)(6) will be granted, and I will consider her objections to Magistrate Judge Reid's Report and Recommendation. I proceed to a review of Daly's objections.[2]

## III. DALY'S OBJECTIONS

Daly's objections (ECF No. 28) to Magistrate Judge Reid's R&R all concern her claims of ineffective assistance of trial counsel under *Strickland v. Washington*, 466 U.S. 668 (1983). I conclude that Daly cannot establish prejudice under *Strickland*, so I will deny her habeas claim.

Magistrate Judge Reid's R&R reviews the record of Daly's trial in detail. There being no objection to the facts as recited in the Report and Recommendation, I draw on it here to summarize the facts relevant to Daly's objections. R&R, ECF No. 22, at 1–8.

Petitioner Lauren Daly was a pediatrician who was romantically involved with the victim, Margaret Grover. The two of them lived together and had two children. After several years together, Daly and Grover separated due to domestic violence in the relationship. They shared custody of their two children.

Daly alleged to police that on May 11, 2013, Grover attempted to run her over

---

[2] Because I will deny habeas relief, I did not require briefing from Respondents in response to the objections to the R&R.

with her car during a custody exchange. Grover denied this allegation. Grover testified at trial that, on May 11, Daly had stood in front of Grover's car, blocking her from leaving, and attempting to speak to their son in the car. Grover testified that Daly opened the driver's side door of the car, at which point Grover drove away. After the May 11 incident, Daly and Grover's attorneys exchanged letters about future custody transfers, confirming that in the future, drop-offs would be "curbside." In that exchange of letters, Grover's attorney indicated that this meant that Daly would need to stay in the house during drop-offs, allowing the child to walk alone from Grover's car to Daly's house. Daly's attorney did not comment on this specific provision of the proposed agreement.

On May 27, 2013, Grover drove to Daly's house to drop off their daughter for a visit. Grover and Daly's son was also present in the car. Daly walked out of her house, carrying a concealed gun, and stood in front of Grover's car. Daly spoke to her son, who was in the passenger seat. According to Grover, Daly then stood in front of Grover's car and pointed a gun at Grover. Daly started to shoot, hitting Grover in the face, chest, and abdomen. Daly's gun jammed, and Grover drove away with the children in the car.

Daly's account differs.[3] Daly's trial defense presented a narrative that this

---

[3] Daly did not testify at trial. *Commonwealth v. Daly*, No. 1510 EDA 2019, 2020 WL 4347045, at *3 (Pa. Super. Ct. July 29, 2020) (citing Trial Court Opinion, 10/8/15, at 8).

incident began when Daly stood in front of Grover's car to speak to their son, and Grover suddenly pulled forward to try to hit Daly with the car. Daly's counsel argued that Daly only then took out the gun and shot at Grover in self-defense. However, three neighbors within earshot testified that they heard the gunshots before they heard the car accelerating. Daly did not present witnesses to refute this order of events. At trial, a ballistics expert testified that the bullet trajectory analysis was consistent with Daly standing in front of the car and shooting into a stationary car. An expert in accident reconstruction testified that the tire marks were most consistent with Grover's account of events. Daly presented an accident reconstruction expert who testified that either scenario (a static or moving car) was plausible.

Daly was arrested and questioned by State Trooper Philip Rhyn, who testified at trial that the first question Daly asked him was whether Grover was dead. When he told her that Grover had survived, Daly apparently burst into tears and said: "Well, it looks like I went through all this school [sic] for nothing." Notes of Testimony, July 1, 2013, at 168:16–24.

On July 7, 2014, the jury convicted Daly on all counts. Petition at 2. Her conviction was upheld on appeal, and her conviction became final on September 18, 2017. *Id.* Daly filed a timely petition for state postconviction relief on September 4, 2018. *Id.* This petition was dismissed on April 17, 2018, and the Superior Court affirmed on July 29, 2020. *Commonwealth v. Daly*, No. 1510 EDA 2019, 2020 WL

4347045, at *4 (Pa. Super. Ct. July 29, 2020). On December 29, 2020, the Pennsylvania Supreme Court declined to review Daly's case. *Commonwealth v. Daly*, 243 A.3d 729 (Table) (Pa. 2020).

On January 11, 2021, Daly filed a timely petition (ECF No. 1) for writ of habeas corpus in this Court, seeking review of her convictions. She presented four claims:

(1) trial counsel was ineffective for failing to present Daly's property deed at trial as part of the "stand your ground" self-defense argument;

(2) trial counsel was ineffective for failing to object to the trial court's factfinding related to Daly's self-defense claim;

(3) trial counsel was ineffective for failing to object to the trial court's conclusion that Daly was obligated to remain in the house during custody exchanges; and

(4) trial counsel's cumulative errors rendered Daly's trial fundamentally unfair.

*Id.* at 3–4. Despite Magistrate Judge Reid's denial of Daly's second motion for an extension of time to amend her petition, Daly submitted an amended petition that added, in relevant part, claims that her trial counsel was ineffective for failing to present a "stand your ground" defense and by failing to request an imperfect self-defense charge. Amended Petition at 59, 71.

Magistrate Judge Reid recommended that Daly's petition be denied in part and dismissed in part. As relevant to Daly's objections, Magistrate Judge Reid found

that Daly's "stand your ground" and imperfect self-defense *Strickland* claims were

untimely. He recommended that these claims should be dismissed because they did

not relate back to Daly's original (timely-filed) claim arguing that trial counsel

should have introduced the deed to her property.[4] Magistrate Judge Reid found that

Daly's arguments about her trial counsel's failure to object to the trial court's

improper factfinding[5] did constitute *Strickland* deficient performance. However, he

recommended that this claim should be denied because Daly failed to establish

*Strickland* prejudice.

Daly objects to these findings, arguing that the "stand your ground" and

imperfect self-defense claims did relate back to her original habeas petition, and that

they are timely under AEDPA. Objections to Report and Recommendation

("Objections"), ECF No. 28. She also objects to Magistrate Judge Reid's

determination that she failed to demonstrate *Strickland* prejudice. Upon reviewing

Daly's objections, I agree with Magistrate Judge Reid that Daly is not entitled to

habeas relief. I therefore adopt the conclusion of Magistrate Judge Reid's Report and

---

[4] Magistrate Judge Reid also notes that the amended petition containing these claims was
filed in violation of a court order denying Daly a second extension of time to file an
amended petition. R&R at 19.
[5] Specifically, the Pennsylvania courts reviewing Daly's claims found that there was a
binding agreement between Daly and Grover that required Daly to remain in her house
during custody pick-ups and drop-offs. R&R at 27. Magistrate Judge Reid found that this
determination by the trial and PCRA courts was an unreasonable determination of the
facts. R&R at 28.

Recommendation.

## A.  Objection 1: Relation Back of "Stand Your Ground" *Strickland* Claim

Magistrate Judge Reid determined that Daly's *Strickland* claim arguing that her trial attorney should have presented a "stand your ground" defense under 18 Pa. C.S. § 505(b)(2.3),[6] which was presented in Daly's October 2021 amended petition, does not relate back to Daly's timely-filed 2254 habeas petition. He recommended that this claim be denied as untimely because it was filed after the expiration of AEDPA's one-year statute of limitations on January 12, 2021. R&R at 18, 18 n.2. Daly objects to this determination, arguing that her claim regarding her trial attorney's failure to request a "stand your ground" jury instruction was part of the same "core of operative facts" as the claim that her counsel deficiently failed to use her property deed to support this theory of defense. Objections at 44 (citing *Mayle v. Felix*, 545 U.S. 644, 664 (2005)). I agree with Daly that this claim relates back to her timely-filed petition, but I find that this claim is not meritorious.

### 1.  Relation Back

---

[6] Prior to the enactment of 18 Pa. C.S. § 505(b)(2.3), individuals outside of their home or workplace were generally required to retreat, if safe to do so, instead of using deadly force in self-defense. The enactment of 18 Pa. C.S. § 505(b)(2.3), also known as Pennsylvania's "stand your ground" law, largely removed this requirement to retreat. Under this law, individuals who are in a place they are legally permitted to be (and who are not engaged in criminal activity and are not illegally possessing a firearm) may use deadly force in self-defense against someone armed with a deadly weapon. In that set of circumstances, there is no requirement to retreat even if it would be safe to do so.

Relation back is permitted when an untimely amended claim is "tied to a common core of operative facts" that it shares with a timely claim. *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 237 (3d Cir. 2017) (citing *Mayle v. Felix*, 545 U.S. 644, 664) (2005)). Claims separated from one another "in time and type," or claims tied only by their shared relationship to a particular "conviction or sentence" are not sufficiently related to allow for relation back. *Id.* (citing *Mayle*, 545 U.S. at 657). A new legal theory tied to the same set of facts can relate back to an earlier claim. *Mayle*, 545 U.S. at 658 n.5 (citing approvingly a case in which relation back was allowed for a "new legal theory tied to the same operative facts as those initially alleged").

Daly argues that her claim that her trial counsel was ineffective for failing to present a "stand your ground" defense relates back to Claim #1 in her original petition. Daly's timely habeas filing in this Court included:

> **Claim #1**: Ms. Daly argued self-defense ("stand your ground") (18 Pa. C.S. § 505(b)(2.3)) at trial, arguing she was lawfully on her property when Margaret Grover drove her (Grover's) vehicle directly at her (Daly) in an aggressive and dangerous manner, prompting her (Daly) to fire multiple shots in self-defense. To establish Margaret Grover drove her vehicle onto Ms. Daly's property, however, trial counsel needed to obtain and present the property's deed, which identified the dimensions of Ms. Daly's property. Trial counsel never obtained and presented the property's deed at trial. Trial counsel was ineffective for not doing so and his ineffectiveness prejudiced Ms. Daly. U.S. Const. admts. 6, 8, 14.

Petition at 3. The R&R recognizes that Daly has held contradictory positions regarding the presence or absence of a "stand your ground" defense: "The original

petition stated: 'Ms. Daly argued self-defense ("stand your ground")' . . . In the amended petition, she alleges that trial counsel failed to put forward a 'stand your ground' argument under §505(b)(2.3)." R&R at 20. Daly's initial and subsequent claims are two different theories for how her trial counsel could have employed a "stand your ground" argument: in the former, Daly faults him for failing to present evidence to support his argument; in the latter, Daly alleges that he simply did not argue a "stand your ground" defense.

Daly's timely and untimely claims both address her trial counsel's alleged errors in presenting (or failing to present) a "stand your ground" defense under 18 Pa. C.S. § 505(b)(2.3). Because both claims present (distinct) legal theories that depend on a common set of facts, Daly's "stand your ground" argument in her amended petition relates back to her originally-filed "Claim #1" and can be addressed on the merits.

## 2. Procedural Default

Next, Daly acknowledges that this claim is procedurally defaulted because Daly did not exhaust it in state court. Amended Petition at 71 (referring to this claim as "Defaulted Claim #2"); *see* R&R at 14 (explaining AEDPA's procedural default rules). Daly relies on *Martinez v. Ryan*, 566 U.S. 1 (2012) to argue that this Court can nevertheless rule on the merits of this claim because her initial Post Conviction Relief Act ("PCRA") counsel was ineffective by failing to raise it in state court.

In *Martinez*, the Supreme Court held that "[t]o overcome default, a prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez v. Ryan*, 566 U.S. at 14. To succeed on the merits of an underlying ineffective assistance of trial counsel claim, Daly would need to show that her counsel's performance was deficient and that her counsel's actions prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1983). Daly's claim is not sufficiently substantial to overcome procedural default because she fails to show that her trial attorney's error prejudiced her defense.

Daly's trial counsel was ineffective for failing to seek a "stand your ground" jury instruction. At trial, the judge instructed the jury that "if the defendant knew that she could avoid the necessity of deadly force by moving out of the way . . . then deadly force would not be justifiable." N.T. 7/7/14, at 144. Daly's attorney did not object to this instruction. *Id.* at 159 –161. The Pennsylvania Superior Court's PCRA decision mentioned Pennsylvania's "stand your ground" law in disposing of another one of Daly's arguments, writing that Daly could not have successfully argued "stand your ground" because she "was on the street at the time of the shooting" and not on her own property. R&R at 28 (citation omitted). As Magistrate Judge Reid explains in his R&R, this is an inaccurate statement of Pennsylvania's "stand your ground" law:

> Section 505(b)(2.3) states than an actor "has no duty to retreat and has the right to stand his ground and use force, including deadly force, if ... *the actor has a right to be in the place where he was attacked*." (Italics supplied). It does not include any distinction between public and private property.

R&R at 29. If Daly's theory of the case is believed—that she stood in the street and shot Grover only after Grover began accelerating the car to run Daly over—a "stand your ground" jury instruction would have been appropriate. The jury was instructed that Daly had a duty to retreat if she could avoid the necessity of using deadly force by doing so; but Pennsylvania law did not, in fact, require her to retreat.

Daly shows *Strickland* deficient performance as to this claim, but she fails to show *Strickland* prejudice. To succeed on the prejudice prong, Daly would have to establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668 at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 669.

There is not a reasonable probability that the requested "stand your ground" jury instruction would have changed the outcome of the trial. "[T]o prevail on a justification defense, *there must be evidence* that the defendant . . . reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm[.]" *Commonwealth v. Rivera*, 108 A.3d 779, 791 (Pa. 2014) (emphasis added) (citations omitted). Daly did not adduce evidence to support a "stand your ground" defense.

25

No evidence indicated that Grover accelerated toward Daly, creating a situation in which Daly would, reasonably or unreasonably, believe she needed to resort to deadly force. Instead, the Commonwealth elicited testimony from several witnesses who stated that the sound of gunshots preceded the sound of a car accelerating. The ballistics and accident reconstruction experts for the Commonwealth agreed that the evidence was consistent with Daly shooting into a stationary car. Even Daly's accident reconstruction expert testified that the car could have been moving or stationary. As Magistrate Judge Reid determined:

> It was evident not only to Detective Kirby but to any juror that staying away from the front of Grover's car was Daly's only option to keep herself safe, regardless of any "stand your ground" right she may have had. The natural inference is that Daly did not have a concealed gun in her sweatshirt pocket to protect herself against being run over, but because she planned to shoot Grover.

R&R at 30. The Commonwealth's case was strong, and Daly has failed to show that this additional "stand your ground" instruction would have led even one juror to reach a different conclusion.

### 3. Conclusion

Daly's underlying ineffective assistance of trial counsel claim is not substantial enough to satisfy *Martinez* and excuse her procedural default. Daly cannot establish that her trial counsel's errors caused her to suffer prejudice under *Strickland*. Daly's first objection to the R&R will be sustained as to the issue of relation back. However, Daly's claim for relief does not overcome procedural

default and will therefore be dismissed.

## B.  Objection 2: Relation back of imperfect self-defense *Strickland* claim

Magistrate Judge Reid recommended dismissing a second *Strickland* claim presented in October 2021, this one based on her trial counsel's failure to request an imperfect self-defense jury charge, because it did not relate back to her timely-filed original petition from January 2021. I will adopt Magistrate Judge Reid's recommendation.

Daly argues in her amended petition that her attorney should have requested an imperfect self-defense jury charge. Amended Petition at 59. Daly was apparently not informed by her trial counsel that a jury's finding of imperfect self-defense could negate some elements of the charges against her. *Id.* This claim was not raised in Daly's original petition, but Daly argues that this claim in her untimely amended petition relates back to her timely Claim #1, in which Daly argues that her trial counsel was ineffective for failing to introduce a deed to support a "stand your ground" argument.

In *Mayle v. Felix*, the habeas petitioner argued that a new claim relating to the improper admission of his pretrial statements related back to a timely-filed claim about the improper admission of a witness' videotaped statements. 545 U.S. at 651. While both claims related to the propriety of statements introduced at trial, the factual and legal bases for these two claims were not sufficiently intertwined to

satisfy the standard for relation back. *Id.*, 545 U.S. at 654.

Likewise, Daly's imperfect self-defense claim does not relate back to Daly's timely-filed "stand your ground" claim. The theory of imperfect self-defense is distinct from the "stand your ground" law, and it would have involved separate arguments by Daly's trial counsel. It is not enough that these two claims both relate to different possible defenses that trial counsel could have used. I will overrule Daly's objection and adopt Magistrate Judge Reid's recommendation as to this claim. Daly's ineffective assistance of counsel claim concerning imperfect self-defense will be dismissed as untimely.

## C.  Objection 3: Cumulative *Strickland* prejudice

Finally, Daly objects to Magistrate Judge Reid's determination that her cumulative claims under *Strickland* are insufficient to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687. I agree with Magistrate Reid's recommendation and will overrule Daly's objection.

As addressed *supra* at III.A., Daly is unable to show *Strickland* prejudice resulted from her trial counsel's failure to request a "stand your ground" instruction. As to the remainder of Daly's claims, I adopt Magistrate Judge Reid's R&R finding that *Strickland* prejudice did not exist as to the other deficiencies and alleged deficiencies of Daly's trial counsel. R&R at 28–32. Even if analyzed cumulatively,

the "stand your ground" deficient performance, when coupled with Daly's remaining

arguments about her counsel's errors, do not create a "reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 687. I will overrule Daly's third objection.

## IV. CONCLUSION

Upon review of Magistrate Judge Reid's Report and Recommendation and

Daly's Objections, I find merit only in Daly's first objection. However, I still find

that Daly is not entitled to habeas relief on that claim because she fails to show that

she was prejudiced by her trial counsel's error. I will therefore overrule Daly's

second and third objections and adopt the R&R as amended above. Daly's petition

will be dismissed in part and denied in part.


s/ANITA B. BRODY, J.
_____
ANITA B. BRODY, J.